at all. At this time, would counsel for the appellant please introduce himself on the record to begin. Thank you. Good morning, gentlemen. Attorney Steven T. Fanning, Providence, Rhode Island, on behalf of the plaintiff appellant. This is a strange case in some respects, possibly many respects, gentlemen. The first thing to note is that the case is somewhat bifurcated at this point, as you may have noticed. The federal and state discrimination claims were denied and dismissed by the trial court judge in Providence. However, all of the state law claims have been remanded to the state court in Newport. So you have potentially what may be an anomalous result between what transpired with the facts in terms of the That happens all the time in civil cases when the federal claims are dismissed at this early stage. The district court could have had the discretion to entertain them, but can also remand them to state court. I understand that, Your Honor. It happens all the time. I understand that. But in this particular case, if you have a situation where in the state court the judge is finding in the plaintiff's favor that she had been subject to That's not a surprising outcome. That's the point of supplemental jurisdiction. When there's no federal claim to resolve, we leave it to be the state court. There's no inconsistency. State does what it does in its claims. The federal court did what it did with its claims. I think let's go on to the other. That's not what your appeal is about. No, it's not. What is the appeal about? Just a point of clarification. My apologies. That's okay. This is a case in which the plaintiff is a white woman. She's heterosexual. She's Christian. She's female, of course, and she is in the protected age category. The situation that evolved here for her was after almost 25 years of being a professor at Salvador Regina with an outstanding record, as has been pled in the complaint, things started to break down, at least from the perspective of certain people. It's her position that as a full-time faculty member in the Spanish department, she was made a target by a number of individuals, students, other faculty, ultimately emanating from her protected characteristics. I think that's clear in your brief, but one of the arguments and the offense of making it, the appellees, is that you're basically and you listed all her check in the blanks, but just by juxtaposing those protected categories, what else have you done here? Well, I'm not sure what you mean by what have we done, but the judge found that primarily, in my view, at least in her perspective, that anything that the plaintiff was subjected to was basically isolated, de minimis. Well, what I see that's been pled and what you just alluded to is a department at this college that had a lot of tension and people didn't like each other and they may have been going after each other, and that may have a lot to do with your state law claims. But what you have to show here is some plausibility that the decision to go after her had something to do with a protected characteristic. Now, you listed a few, but what did you plead that says the reason that she was terminated was any of those protected characteristics that you listed? I think it's, with respect to her, I think it's pled throughout the complaint. All right, take her gender. What about this situation where Professor Mitchell and others clearly did not like her suggested that that was because she was a woman? Because at one point she was referred to in a demeaning and insulting fashion as a cis white woman. By a student, student D, who was upset about something that happened in class, and the student wrote a letter and maybe she was disciplined for what happened in the class, but you can say what happened in the class was not appropriate regardless of her gender, and there's nothing about what the school did that I see in the complaint that says it's because the student said she was white. Well, I think it alleges in the complaint, Your Honor, that the school, in concert with Mr. Mitchell, the department chair, or on its own, and as supported by the minority position of the hearing board, the faculty hearing board, said that there was an effort to basically shoehorn complaints about this woman into categories that would enable her termination. That doesn't show why. Well, it is, in fact, represented in the complaint. Let me just finish on this point. There is the student's reference to two of her protected characteristics, or three, I guess. White, cis woman. Is there any other fact in the complaint, allegation in the complaint, that identifies her protected characteristics? There are 25 representations in the complaint. About her protected characteristics? Yes. Give me an example. She hates Spanish people. That's about her protected characteristic? Well, she's not Spanish. She's a white American. How do you know that? Well, I know her, and I know that that's what happened. I don't understand how that, the fact that she's being targeted for that reason, why does that suggest she's being targeted because of her protected characteristic as opposed to the view? Well, because her protected characteristic is, one of them is that she is white. I just don't understand what that has to do with why the fact that they're targeting her for her view means that her protected characteristic is being targeted. Well, the vast majority... Is it inherent in people who are not Spanish that they hate such people? Well, that's what they're saying about her. No, they're saying that she hates such people, and that's why they're targeting her. What does that have to do with her protected characteristic? Well, I think the representation is that that is an example of the fact that she teaches a Spanish class and that she, after 25 years, has now presumed to hate Spanish people. And what does that have to do with her protected characteristic? The statements that have been made, as I say, there are at least 25 of them. Well, what are the other ones? There's the white cis woman. I understand. Those are protected characteristics. The view she has about other people with their protected characteristics, how is responding to those views targeting her protected characteristics? I just don't understand the logic of that. Well, it says she's a xenophobe, for example. That means that that's her protected characteristic that's being targeted? I think the protected characteristic... If you target a person for their racist views, you're targeting their protected characteristic? I think in a way you are, yes. In what way? Well, I think you're saying if you say so-and-so hates... If I say I hate Christians, that means that if you fire me, you're targeting my religion? I think it's arguable, yes. Arguable? What does that mean? Well, that's why... Is that your view is that, yes, that would be targeting my religion? If you target me for discriminating against someone else's religious beliefs, that's targeting my religion? I think in some sense it is. What is the some sense? Well, look at a racial, if I may, look at a racial situation. If someone were to say regarding the plaintiff, well, she hates black people, which is, in effect, something they have said as well. That means you're targeting her protected characteristic. You fire her for that? If she were a black person, would someone say the same thing? Then you would be able to prove if they had a comparator who said the same thing of a different race, then you would be targeting her protected characteristic. But I think it's a sort of astounding claim to suggest that you're targeting someone's protected characteristic if you take action against them because their views about other people's protected characteristics. I think what prompts, it's not just because of her views, it's because she is different than they are. Because she... Well, what is the evidence in the complaint besides that student's comment about her protected characteristics that supports that position? That she shouldn't be teaching. And that she, because of a myriad of characteristics, shouldn't be in the classroom. Now, I agree with you. Does that mean they don't like the way she teaches or does it mean that they don't like her and her personal characteristics? The problem is we've got seven or... It doesn't matter if they don't like her personal characteristics either. What matters is whether they don't like her protected characteristics. I'm sorry. And the only thing that I've seen in the complaint that you've yet identified is that statement by the student. Well, there are many from a... Well, there are at least 25 of them, Your Honor, where she has been placed in a position. They're not saying to her, we don't like her because she's maybe overweight or something of that nature. They don't like because she said xenophobic, transphobic, et cetera things. Anti-Semitic. Yeah. And that means if you punish someone for their anti-Semitic views, you're targeting their protected characteristics because of their religion? I think so. Do you have any support in any case that suggests that? I believe we do have that, Your Honor. What is a case that suggests that? I beg your pardon? What is a case that suggests that? It's on my head. I can't recall. Because if I were... You could be of any number of religions or ethnicities or whatever the protected category is and have that same hatred. So that whole gamut of people have the same hatred, but yet they all have different protected characteristics. It doesn't line up. Well, in this particular instance, Your Honor, they did not... She was not attacked because of her teaching methods or because... Well, she was in part. Well, in part. But the device that they used, the device to attack her, even for her teaching methods, were her protected characteristics. Okay. With respect to the student's views, which do expressly refer to her protected characteristics, what is the indication? I didn't see in your brief, in your argument section, you don't seem to identify that statement by the student as supportive of the nexus argument that you address in the brief. Well, part of the problem is that the information that we need to do that has always been denied the plaintiff. No, I guess I was making a different point. It wasn't clear to me you were pointing to the student's comment as supportive of the nexus argument in your brief. You mentioned it in the facts section, but in the actual argument section of the brief, I don't see you identifying the statement about the student and what the student said as being something that shows the reason that the school acted. The school acted, as I think the complaint alleges, is in concert with administrators and the department chair because they wanted this woman out. Right, but isn't that the essence of it? We want her out. And the real theme of the complaint was, and they set it up. They got students to write all sorts of bad things about her, and they took all that information, and then they executed their plan to get rid of her. And like I said, we've talked at the beginning about your state law claims. Maybe that's something. But it's not enough that they wanted to get rid of her. It's got to be they wanted to get rid of her because she is white, old, heterosexual woman. Any of those things. But none of that is plausible. The only thing that relates to the characteristics of what the students said is they're just giving sort of ammunition to say students don't like her. That's a reason to get rid of her. We want to get rid of her because we don't want her around here because we fight a lot in this department, and we are at odds with each other. I think a lot of that is, with respect, Your Honor, is what the district court decided. But I don't think it's accurate. I think there was a manipulation of these pieces of evidence to brand her in a way that was predicated on her protected characteristics. Counsel, but that's your theory. But I have the verified complaint, and I know this was a removed case. And you filed it in state court. You plead Title VII. You plead ADA. But, again, I'm not sure if the pleading standard at the Rhode Island state level is the same as the federal level. But this court has a plethora of case law telling litigants how to plead. And, again, that's why we're asking all these questions. But you never amended the complaint. You could have amended the complaint and included additional allegations on a good faith basis. But the complaint stayed the same, and that's the problem we're addressing. I think, again, we're only dealing with the federal claims. But, again, I think you have a Rule 8 pleading problem. Which, again, the complaint could have been amended. It wasn't amended. Well, we did amend it once, and not here. We did it in the U.S. District Court. Or, actually, I believe it was in the state court, and then it was removed to the federal court. No, in federal court, we just have a verified complaint. Okay. Then it was amended from being in state court. And then, subsequently, as you know, it was denied under 12b-6 and moved here. But the argument I would make is that without any level of discovery, we can't tell who is saying what. We have a bunch of anonymous. Obviously, you'd like to have discovery, but in the federal system, you don't get it automatically. You have to survive a properly brought 12b-6 motion, and that's you can't say, you know. And there are times when you have certain allegations, you might be able to ask the district judge, you know, limited discovery for X, Y, or Z, or we need this additional information in order to amend the complaint. That wasn't done here. And, again, we're dealing with the operative complaint that came to us after the removal. We can't assume anything that's not there. We have to go by plain language of everything that's pleaded there. Well, we are in the process of pursuing it aggressively, I would hope, and I think we have a different view of the case, obviously, which is that seizing on protected characteristics, you can't just, in my opinion, take the position that we're going to ride someone out of town by seizing on her protected characteristics, which is what I submit to you has happened here. I think there would be some clarification with discovery, and we'd like the opportunity to do that so we can at least make sure that the plaintiff has a fair and full opportunity to be heard. Not forgetting, she's a 25-year employee there with tenure, and all the other comments that were made by the various hearing boards clearly implicate, and they use the words, bias, bias, bias. These are the terms that the boards use. Even the majority opinion says that the decision to oust the plaintiff was biased. Biased as in they do minority things. They might have been sort of setting her up to get rid of her. But, again, that may be a good claim somewhere, but I'm not sure it's a Title VII claim. Well, I respectfully, Your Honor, would disagree, but thank you for your attention. Am I done? I can't tell if I'm done. Thank you.  Thank you, counsel. At this time, would Counsel for Appellees please introduce himself on the record to begin? Good morning, Your Honors. Joseph Whelan for the Appellee Salve Regina University et al. Your Honors, Salve Regina is located in Newport, Rhode Island. It was founded in 1934 by the Sisters of Mercy. The faculty manual was developed by the administration with very significant input from the faculty itself and is born out of the idea of shared governance where faculty will have a say in the very difficult decision whether or not you should terminate a tenured faculty member. This case that is before you. This is the first tenured faculty member ever dismissed from the institution. That is correct, Your Honor. Since 1934, it is the first. I don't know how far back the faculty manual goes. I have seen them back into the 50s, but not before that. But this concept has been around a long time. The hearing committee, the faculty hearing committee, is not just a committee that is appointed on an ad hoc basis. Let's go into the merits of their. His contention is there's 25 different allegations. We refer to protected activities. Let's set aside the student's reference to cis white woman. Those other ones seem to be the ones that your opponent mentioned where they said she was a xenophobe, they said that she, et cetera. What is your response to those? Why are those not evidence that she was being discriminated against on her protected class? There is no basis to find a claim that because she is accused of being discriminatory that that is discriminatory. That is the simplest way to address it. But in fairness to the plaintiff and in fairness to my brother, Mr. Fanning, with whom we've had many, many cases, I do want to point out in the pleadings where there are specific references that may be gleaned as relating to a protected class. And I want to do so to point out that I believe even those few are very insignificant and do not constitute the basis for a claim. The first of which, there is conclusory allegations throughout. The first that is in any way could have a nexus is paragraph 71, and again, that is the student complaint, the student comment. The student comment fails for a different reason. The student comment fails because the student, by definition, has no authority over the employment relationship. And thereby, it cannot be the basis. But the concern is the temporality of the action following that comment and whether it was the raising of that, those features of her, that for the first time right after that, then the action is taken. Your Honor, that comment was one of, I believe, nine or ten students making visceral complaints about the conduct of Professor Crawford based on her in-class conduct. It is the same conduct that the Faculty Hearing Board went and looked at and looked at over five years. They did not say, we're going to look at this isolated case. They went over five years of student records and found the same type of conduct. The district court made a finding about nexus with respect to the student comment, which is a little bit different than the one you're now making. I believe that there is no nexus. There can be no nexus. Do you understand the briefing of the plaintiff to us to address the nexus finding by the district court with respect to the student comment? I do not, Your Honor. The next paragraph that I think could plausibly draw a connection between a protected class and conduct is paragraph 73, in which she alleges that Salve Place plaintiff replaced her with a male significantly younger than plaintiff, at least for part of her teaching schedule. And when you think of that, Your Honor, in the context of this case where she has made allegations that she has been discriminated against based on five protected classes, all of which are generally sort of minority positions in those classes, you would have to have somebody replace her with the identical position on those five points in order for That can't be right. Well, let me finish where I'm going. In order for one reference, the idea that I am being replaced in part by a younger person, that's not enough. Courts have addressed that routinely. It is not enough. And my point about she's made so many claims that it would be almost impossible for her to not be replaced in part by somebody who is not in one of her protected classes. Okay, but she's basically here, she's saying a male significantly younger, and then she's even actually pinpointing who she understands that person is. Isn't that sufficient? It is not, Your Honor. It is not sufficient. Just replacing somebody in part by somebody who is younger is not enough. I forget how it works under, we're applying a Donald Douglas framework. Yes. So is that enough for the prima facie case? There has to be a nexus. There has to be a nexus between the conduct and her age. I thought for the prima facie case you don't need a nexus. Then they have to give a legitimate non-discriminatory reason, which here was she was impossible to deal with for all the following reasons. She has no allegation. And that's why the comparator would matter. That's correct, Your Honor. How about that she gives an alternate reason for the comparator, which is it's somebody, another faculty member's husband, which isn't a, I mean, the complaint itself makes it sort of, could be either one, we don't know. If it was because we wanted to help out this other faculty person, would that be, by hiring their husband, would that be a Title VII violation? It would not. Then you had another, is there another paragraph? Yes, there are two other paragraphs. Paragraph 74, she identifies an unspecified person who at some unspecified point in time referred to her as old school. That is not, first of all, that is not a claim of anything because it doesn't identify the individual. And there's a second one in that paragraph that some unidentified person at some undetermined point in time suggested to students that she was, they might want to find somebody else as an advisor. The old school ties to using titles and first names. She wants people to call her, apparently, professor and not her first name. That may be old school. It's also respectful. It doesn't necessarily have anything to do with age. I can imagine a younger professor wanting that, too. I mean, did this really, is this an allegation about age? I don't believe it to be at all. That's what I didn't understand. Some of these are using those terms. How do we make sense of that? And the next one is similar. Is this in paragraph 74 also? No, in 78. But 74 also, there's an allegation. I don't believe it does, Your Honor. I don't think there's anything in there that says that seniority is necessarily linked to age. And even if there were. No, but she's alleging that the senior professors have not been given the office assignments and the younger ones have. So whether it's wrong or right. It is a conclusory allegation. There is no specificity whatsoever. There is nothing in there that says this professor was given priority over the ruling. Your position is she would have had to plead, for example, Professor Van Winkle was 27 years old, male, and he was provided office 208, which was a superb office, was a view of a pond where I was put in an office with no windows or something like that. I would say more than that. She would have to plead. I asked for that office and didn't get it. Something that made it a real comparator as opposed to this conclusory. What do we know about what she's using that as evidence of the termination on the protected ground, not as evidence of adverse employment action in its own right based on a protected ground. And I we assert that it's not 78. What's what's the in 78. She says again that another faculty member that other faculty members were treated with far greater deference and that an unidentified male administrator employed at Salve who had some kind of, quote, legal matter and who was accommodated with stepping down and a sabbatical and course reductions. There's just no nexus whatsoever. Those are the only specific facts pled in the entire case. They are a compilation of straight other than the things that you earlier just by saying that evidence of her discriminatory attitudes, not saying they're true, but evidence of that. That was the ground is not evidence of her being discriminated against. That's right. Your Honor. So if I may very quickly, Your Honors, we haven't even touched on the harassment claim, but there is just no facts pled in this complaint that in any way rise to the level of a harassment claim under any of the statutes. There's nothing that demonstrates a level of severity. There's nothing that even if there were, you would have the same nexus as you would. I would, Your Honor. And I'll just close by again, something that we haven't touched on. Counsel, would I ask, opposing counsel, the pleading standard in Rhode Island state courts, is it different to rule eight pleading standard in federal court? It is not different, although I will say that I don't believe the state law has affirmatively adopted the Iqbal Twombly standard. But the proposition, I oppose to counsel that. You remove the case. Obviously you have a more favorable pleading standard from a defense perspective. Is this a complaint that should have perhaps been amended when, assuming the allegations could have been brought? If the complainant thought that the difference in the federal treatment of a claim under 12B6 was going to be different in federal court, rule 15 gives every right, liberal right, to amend the pleading. They could have amended the pleading. I will note that the state court filing, I believe, is the same state court filing. That, too, has not been amended. I believe it was amended before we filed the motion to dismiss, but not since. Again, before this Court is a verified complaint. That's what we have. That's correct. Lastly, Your Honors, the idea of retaliation, to establish a prima facie case of retaliation, you must show that she undertook protected conduct, she suffered an adverse employment action, and that the two were causally linked. To establish that she engaged in protected conduct, she either has to show that she objected to conduct by opposing something that was a charge, she doesn't present a single fact that in any way comes near that. So we believe, for that reason, the retaliation claim should be dismissed. Did she not file something with the EOC? I apologize, Your Honor. Did she not file a charge? Post-termination. So that doesn't go to retaliation. Can she say that my challenging of the, I think this whole disciplinary thing was a charade and violated Title VII because they went after me because of my gender? So my opposing it in the way that I did is protected activity. That can't support a retaliation claim, Your Honor, because it is the termination. The way it works is she received a letter notifying her of her termination, the faculty manual, thereby anything after that is defended. In the advance of the termination, presumably within the school she was opposing it. Yes, she then gets to appeal it to a committee, to a faculty committee, and then from the faculty committee she can appeal it to the Board of Trustees. But they are appeals. Did she take any opposition to what happened to her before the President fires her? None whatsoever. She didn't do an appeal? No, she didn't appeal. You're saying the adverse action is the termination. Therefore, we would have to identify a protected act motivating the termination. So I'm asking you if that's right. Did she do anything before the termination to contest what was going on here that she viewed as discriminatory? Nothing. And it's not alleged in the complaint. More to the point of today's work itself, Regina, she gets notified that she's being investigated or not? No, she gets notified that her appointment is terminated by the President of the University. She doesn't get a chance to have a hearing? No, she does. She then is told that she is entitled to appeal that. I see, but that's all post-determination. That's post-determination. So she wasn't aware she was being investigated? Oh, she was aware. I think she knew there was a problem. Did she write a letter saying, this is ridiculous, you shouldn't do this? Not before. But it's kind of a characterization question. You can frame it as, yes, she was fired when she got the letter. But in some sense, she's not fired really until she goes through the process and the trustees at the end affirm the thing. So it's not as clear as you make it when she's terminated. I would agree with that, Your Honor. But I would say that any conduct post the notice that she's being terminated cannot be used to support a claim of retaliation for that notice. What if it was the reason they affirmed? What if the trustees, the reason the trustees affirmed her termination, which actually makes her terminated, is because they're mad she fought this so hard because she thought it was a Title VII violation? Perhaps. That's not the case here. But would it be equally plausible to affirm because they thought they were right? Exactly. Thank you, Your Honor. I appreciate it. Thank you, Counsel. That concludes argument in this case.